NOT DESIGNATED FOR PUBLICATION

Nos. 115,525
115,526

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

DAVID AARON KELLY,
*Appellant*.

MEMORANDUM OPINION

Appeal from Leavenworth District Court; GUNNAR A. SUNDBY, judge. Opinion filed March 3, 2017. Affirmed.

*Kai Tate Mann*, of Kansas Appellate Defender Office, for appellant.

*Michael G. Jones*, assistant county attorney, and *Derek Schmidt*, attorney general, for appellee.

Before MCANANY, P.J., MALONE, J., and STUTZMAN, S.J.

*Per Curiam*:  David Aaron Kelly appeals the district court's order revoking his probation and imposing his underlying prison sentence in two Leavenworth County cases. Kelly argues that the district court was required to impose an intermediate sanction because the State did not establish that Kelly committed a new crime and the district court made insufficient findings that an intermediate sanction would jeopardize public safety. Finding no error, we affirm the district court's judgment.

1

FACTS

On February 13, 2014, Kelly pled no contest to one count of criminal threat in case no. 2013CR763. On the same date, Kelly pled no contest to one count of criminal possession of a firearm in case no. 2013CR883. At a sentencing hearing on April 11, 2014, the district court sentenced Kelly to 13 months' imprisonment for the criminal threat conviction and 17 months' imprisonment for the criminal possession of a firearm conviction. The district court ordered the sentences to run consecutively and placed Kelly on probation for 24 months to be supervised by community corrections.

In February 2015, Kelly admitted to violating his probation in each case by failing to report to his intensive supervision officer (ISO). As a result of the violation, Kelly served 2 days in the Leavenworth County Jail.

On May 5, 2015, the State filed a motion for revocation or modification of probation in each case. The affidavits in both cases alleged that Kelly was arrested on March 13, 2015, for a failure to appear warrant in municipal court and again on April 28, 2015, for interference with a law enforcement officer and falsely reporting a crime. The affidavits also alleged that on May 5, 2015, Kelly was again arrested for possession of stolen property, criminal damage to property, and criminal possession of a firearm. The affidavits also alleged various other probation violations, including failing to report to his ISO on numerous occasions, failing to obtain a mental health evaluation, and testing positive for marijuana and cocaine.

At a hearing on September 18, 2015, Kelly stipulated to failing to report to his ISO, failing to obtain a mental health evaluation, and testing positive for marijuana and cocaine. He did not stipulate to his new criminal charges. Based upon the stipulation, the district court found that Kelly was in violation of his probation and continued the matter over for a dispositional hearing.

2

The district court held a dispositional hearing on October 7, 2015. By that time, Kelly had been bound over for trial at a preliminary hearing before the same judge on new charges, including illegal possession of a firearm, criminal threat, and two counts of criminal damage to property. After hearing recommendations from the parties and the ISO, the district court revoked Kelly's probation and ordered him to serve his underlying prison sentence in each of his 2013 cases. After entering this order, defense counsel reminded the district court that Kelly had not yet been convicted of any new crimes and suggested that Kelly was entitled to an intermediate sanction of 120 days before his probation could be revoked. The district court informed defense counsel that it would "reconsider your motion and make a ruling in writing." On October 8, 2015, the district court filed a memorandum decision denying Kelly's motion for an intermediate sanction. Kelly timely appealed and the cases have been consolidated on appeal.

ANALYSIS

On appeal, Kelly claims the district court erred in revoking his probation and imposing his underlying prison sentence in each of his cases. Specifically, Kelly argues that the district court was required to impose an intermediate sanction because the State did not establish that Kelly committed a new crime and the district court made insufficient findings that an intermediate sanction would jeopardize public safety. The State responds by arguing that the district court did not err in revoking Kelly's probation.

The procedure for revoking an offender's probation or assignment to community corrections is governed by K.S.A. 2016 Supp. 22-3716. Traditionally, once a defendant on probation violated that probation, the district court had the discretion to revoke the probation and order that the defendant serve the underlying sentence. *State v. Brown*, 51 Kan. App. 2d 876, 879, 357 P.3d 296 (2015), *rev. denied* 304 Kan. 1018 (2016). An abuse of discretion occurs when judicial action is arbitrary, fanciful, or unreasonable; is based on an error of law; or is based on an error of fact. *State v. Mosher*, 299 Kan. 1, 3,

3

319 P.3d 1253 (2014). The party asserting the district court abused its discretion bears the burden of showing such an abuse of discretion. *State v. Stafford*, 296 Kan. 25, 45, 290 P.3d 562 (2012).

In 2013, our legislature limited a district court's discretion to order that a probation violator serve his or her underlying sentence by amending K.S.A. 22-3716. The statute as amended provides that after finding that the conditions of probation have been violated, the court is to apply graduated intermediate sanctions ranging from modification of the defendant's release conditions to brief periods of confinement in jail—commonly called "dips" or "dunks"—that increase in length depending on the number of lesser sanctions already imposed by the court. See K.S.A. 2016 Supp. 22-3716(c)(1)(A)-(D).

Pursuant to K.S.A. 2016 Supp. 22-3716(c)(8)(A), the district court may revoke an offender's probation or assignment to community corrections without having previously imposed an intermediate sanction if the offender commits a new felony or misdemeanor while he or she is on probation. Likewise, pursuant to K.S.A. 2016 Supp. 22-3716(c)(9), the district court may revoke an offender's probation or assignment to community corrections without having previously imposed an intermediate sanction if the court finds and sets forth with particularity the reasons for finding that the safety of members of the public will be jeopardized or that the welfare of the offender will not be served by such a sanction. Whether the district court properly imposed a sentence after revoking an offender's probation invokes a question of law over which an appellate court exercises unlimited review. *State v. McFeeters*, 52 Kan. App. 2d 45, 47-48, 362 P.3d 603 (2015).

In its memorandum decision denying Kelly's motion for an intermediate sanction, the district court stated:

> "After a review of the history of the defendant including his prior convictions,
> and the 2 new cases . . . the court concludes that the safety of the public is endangered

4

and further there is probable cause after testimony that the defendant has committed several new crimes. One of the charges (for which he has been bound over) is illegal possession of a firearm, for which he has been convicted before. Further he is charged with criminal threat (again, for which he has been bound over) which has placed a member of the public to be concerned for safety. Additionally, he is charged with criminal damage to property [ ] (for which he has been bound over) which represents four of his many prior convictions. After examining the applicable law and reviewing all the evidence previously presented, for the reasons listed above and others stated on the record, the court FINDS that the request for an intermediate sanction, commonly referred to as a 'dunk' is denied."

Although the memorandum decision is not entirely clear, it appears that the district court denied Kelly's motion for an intermediate sanction and imposed the underlying prison sentence on two grounds. First, the district court found that "the safety of the public" would be endangered by imposing an intermediate sanction. Second, the district court found that "there is probable cause after testimony that [Kelly] has committed several new crimes."

Kelly first argues that the district court erred by denying an intermediate sanction because the State did not establish that Kelly had committed a new crime. Kelly's argument on this point is correct. At the probation revocation hearing on September 18, 2015, Kelly made it clear that he was stipulating only to the technical violations of failing to report to his ISO, failing to obtain a mental health evaluation, and testing positive for marijuana and cocaine. Kelly did not stipulate to his new criminal charges.

Prior to the dispositional hearing on October 7, 2015, the district court had held a preliminary hearing and had found probable cause to bind Kelly over for trial on the new criminal charges. But as Kelly points out, to support an order revoking a defendant's probation based on the commission of new crimes, the State must establish the commission of the new crimes by a preponderance of the evidence. *State v. Gumfory*, 281 Kan. 1168, 1170, 135 P.3d 1191 (2006). Binding a defendant over for trial at a

5

preliminary hearing only requires a finding of probable cause, which is a lower standard than preponderance of the evidence. *State v. Lloyd*, 52 Kan. App. 2d 780, 782-83, 375 P.3d 1013 (2016). Because Kelly did not stipulate to the commission of any new crimes and the State failed to establish the commission of the new crimes by a preponderance of the evidence, the district court erred when it denied Kelly's motion for an intermediate sanction based upon a finding that Kelly had "committed several new crimes."

However, the district court also denied Kelly's motion for an intermediate sanction based on its finding that "the safety of the public" would be endangered by imposing such a sanction. K.S.A. 2016 Supp. 22-3716(c)(9) requires the district court to "set forth with particularity" its reasons for such a finding. Whether the district court's reasons are sufficiently particularized as required by statute is a question of law over which an appellate court has unlimited review. *McFeeters*, 52 Kan. App. 2d at 48.

There are no "magic words" to satisfy the statute's particularity requirement. *State v. Davis*, No. 111,748, 2015 WL 2137195, at *3 (Kan. App. 2015), *rev. denied* 302 Kan. 1013 (2015). "When something is to be set forth with particularity, it must be distinct rather than general, with exactitude of detail." *State v. Huskey*, 17 Kan. App. 2d 237, Syl. ¶ 2, 834 P.2d 1371 (1992). Moreover, an implicit determination that requires an appellate court to speculate about the district court's reasoning is not enough to satisfy the statute's particularity requirement. *McFeeters*, 52 Kan. App. 2d at 48-49; *State v. Wesley*, No. 111,179, 2015 WL 3868716, at *4 (Kan. App. 2015) (unpublished opinion).

Here, at the hearing on October 7, 2015, Kelly's ISO recommended that Kelly's probation be revoked because he had become a public safety risk. Specifically, the officer stated:

"At this point, Mr. Kelly has become out of control. He's become a public safety risk.

"Although, yes, he's only been bound over on two charges, he's had numerous law enforcement contacts throughout the length of his probation. He's had numerous missed appointments. He's had positive drug tests. He has not followed through with any round of treatment that has been encouraged to have him get stated with.

"At this point in time, Community Corrections has nothing else that we can offer, and, again, he is a public safety risk not only to himself, but the community."

The district court made the following findings from the bench at Kelly's dispositional hearing:

"[I]n the short span of your life, you went from criminal damage to property, assault, criminal damage to property, giving a false alarm, criminal damage to property, disorderly conduct, residential burglary, criminal damage to property. So four convictions of criminal damage to property, and these are separate cases, not just a rash of one case where you went out and broke four car windows and got four different convictions for one night's spree. These are all individual matters.

"Then as an adult, you pick up a conviction for possession of a firearm by a convicted felon, and then you pick up this conviction of criminal threat, I think it was. Yes, criminal threat.

"At this point, there's been no deterrence at all shown by your proclivity to commit crimes. It keeps going on and on and on, and then here now another case 2015-CR-510, which I bound you over for criminal damage to property. The Court, hearing testimony about you damaging a window in the jail with such force that it broke bulletproof glass, at this point I don't think there's anything that could be done for you that would be a change in behavior that's so evident from the last seven years of your life of constant law violations, so I'm going to require that you serve the sentence previously imposed with the Department of Corrections."

The district court's findings from the bench, in conjunction with the written findings in the memorandum decision, sufficiently set forth with particularity its reasoning for finding that the safety of the public would be jeopardized by an intermediate sanction. The district court first summarized Kelly's extensive criminal

7

record, which included convictions for criminal damage to property, assault, residential burglary, disorderly conduct, and criminal possession of a firearm. The district court then explained that based upon the evidence it had heard on the new charges, it appeared that Kelly was still engaging in the same type of violent criminal activity. In particular, the district court specifically mentioned the evidence about Kelly damaging a window in the jail with such force that it broke bulletproof glass. The fact that the district court revoked Kelly's probation based on a public safety finding, and not just based on a finding that Kelly committed new crimes, distinguishes this case from *Lloyd*.

The district court's findings were more than an implicit determination that an intermediate sanction in Kelly's case would jeopardize public safety. The district court properly concluded based on the totality of the circumstances that there was nothing more the court could offer to Kelly in the community and "that the safety of the public [would be] endangered" unless Kelly's probation was revoked. We conclude that the district court made sufficient public safety findings in order to circumvent intermediate sanctions under K.S.A. 2016 Supp. 22-3716(c)(9). Thus, the district court did not err in revoking Kelly's probation and imposing his underlying prison sentence in each of his two cases.

Affirmed.